# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| FINTUBE TECHNOLOGIES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | 05-CV-56-JHP-FHM |
| | ) | |
| TUBETECH NORTH AMERICAN, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

Now before the Court is Defendant Tubetech North American, Inc.'s motion to dismiss for lack of personal jurisdiction [docket number 6] or in the alternative to transfer venue, Plaintiff Fintube Technologies, Inc.'s response, and the Defendant's reply.  For the reasons stated herein, Defendant's motion to dismiss is hereby DENIED.

## Facts

This case stems from an alleged breach of contract between the Plaintiff, Fintube Technologies, Inc. ("Fintube") and the Defendant, Tubetech North America, Inc. ("Tubetech"). The Plaintiff is an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma, while the Defendant is a Delaware corporation with its principal place of business in the State of Ohio.  The underlying facts are not in dispute; however, the parties dispute the effect the facts have upon the inquiry as to whether this Court has personal jurisdiction over the Defendant.

1

The material facts upon which the Plaintiff asserts this Court may exercise personal jurisdiction began in 2000.  The first contact between the two parties in this instant action, occurred in October, 2000. In that contact, the Defendant's President, Stephen Oliphant, and an engineer from Tubetech, Bob Allgower, met with representatives from Fintube in Tulsa, Oklahoma.  The meeting in Tulsa was an attempt to secure a business relationship with Fintube. The nature of the proposed relationship was that Fintube would provide sheet metal which Tubetech would then weld into steel tubes.

On February 21, 2001, Mr. Oliphant again met in Tulsa with Fintube representatives to further discuss the fabricating of steel tubes for Fintube.  After the February meeting in Tulsa, Mr. Oliphant had several phone conversations with Mr. Deaton, Fintube's former Managing Director, in regard to Fintube's  welded steel tubes order from Tubetech.

Then, in July 2001, Fintube and Tubetech entered into a contract whereby Tubetech was to weld steel tubes for Fintube.  Pursuant to the contract, Fintube delivered the raw materials to Defendant's place of business in Ohio, where Tubetech would perform the welding process. Upon completion of the welding, the Plaintiff accepted delivery of the finished goods at the Defendant's facility in Ohio.  After accepting the tubes, Fintube transported them back to Tulsa.  The contract was performed by both parties and no problems arose from the transaction.

During 2002 and 2003, the parties had several telephone discussions about the possibility of Tubetech performing additional welding services for Fintube.  From August 2003 to January 2004, representatives of Tubetech and Fintube negotiated a new order for the welding of steel tubes.  The negotiations for the additional services included the exchange of several faxed

quotations and order acknowledgments.  During the pendency of the second order,

representatives of Tubetech, including Oliphant and Allgower, remained in contact with Fintube.

The second order of welded tubes, like the first, was completed with sheet metal the

Plaintiff shipped to Defendant's place of business in Ohio.  And, like the first order, the finished

steel tubes were to be accepted in Ohio and then transported back to Oklahoma by Fintube.

Fintube alleges the second order of steel tubes were unacceptable because of numerous leaks and

other defects.  Plaintiff Fintube ultimately contends the defective steel tubes produced by the

Defendant Tubetech resulted in a breach of their contract.

Due to the alleged breach of the contract, the Plaintiff filed suit in this Court.  Defendant

has now filed a motion to dismiss suggesting the parties' contacts with the state of Oklahoma as

it relates to the contract are tenuous at best and do not support this Court exercising personal

jurisdiction.  In the alternative Defendant requests this Court transfer the matter to a United

States District Court in Ohio.

**Discussion**

Pursuant to the laws of Oklahoma, personal jurisdiction in the courts is to be extended to the

fullest extent allowable under both the Oklahoma and United States Constitutions.  *See* Okla. Stat.

tit. 12,  § 2004(F).  The Oklahoma Supreme Court has ruled that the standard for personal

jurisdiction in this state is coextensive with that of the Due Process Clause of the United States

Constitution.  *See generally Marathon Battery Co. v. Kilpatrick*, 418 P.2d 900 (Okla. 1966).  In the

oft-cited case of *International Shoe v. Washington*, 326 U.S. 310 (1945), the United States Supreme

Court articulated the proper framework to analyze a question of personal jurisdiction under the

United States Constitution.  Specifically, the Supreme Court held "due process requires . . . that in

3

order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316 (citations and internal quotations omitted).

Here, Plaintiff does not contend the Defendant is present within the state of Oklahoma, and there is no evidence to support such a finding; therefore, this Court must determine whether the Defendant has sufficient minimum contacts with the state to justify being brought before this Court. If minimum contacts are found to exist, the Court must then determine whether the exercise of jurisdiction offends the "traditional notions of fair play and justice." *Int'l Shoe*, 326 U.S. at 316 (citations and internal quotations omitted).

Since the *Int'l Shoe* decision, the courts have been provided with a more succinct structure to examine the jurisdictional inquiry. *See e.g. World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090-91 (10th Cir. 1998). The Tenth Circuit, in articulating a roadmap for the personal jurisdiction analysis, stated,

> The "minimum contacts" standard may be met in two ways. First, a court may, consistent with due process, assert *specific* jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472 (internal quotations omitted). Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain *general* personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). However, "[b]ecause general jurisdiction is

not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'" *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Helicopteros*, 466 U.S. at 416, 104 S. Ct. 1868).

*OMI Holdings, Inc.*, 149 F.3d at 1090-91.

Plaintiff has the burden of "establishing personal jurisdiction over the defendant." *Id.* at 1091 (quoting *Rambo v. Am. Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988)). If the Court determines an evidentiary hearing is not necessary the plaintiff must only "make . . . [a] prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* Moreover, "[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ." *Behagen v. Amateur Basketball Assn. USA*, 744 F.2d 731, 733 (10th Cir. 1984). In this case, the Plaintiff has provided affidavits and other written materials upon which to establish a prima facie case, so the Court must determine if the exercise of personal jurisdiction is proper.

First, as required by the Tenth Circuit, the Court must determine whether Tubetech has sufficient "continuous and systematic general business contacts" with Oklahoma for an exercise of general personal jurisdiction. *OMI Holdings, Inc.*, 149 F.3d at 1090-91 (quoting *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (internal quotations omitted)). In this case, there is nothing in the record that indicates Tubetech has the type of contacts with Oklahoma that would make an exercise of general personal jurisdiction proper.

Next, since the Court has determined that exercising personal jurisdiction over Tubetech is improper under the framework of general jurisdiction, the Court must determine whether asserting

jurisdiction is proper under the specific jurisdiction framework.  As previously mentioned, the Tenth Circuit has held that specific jurisdiction can be maintained where the Defendant purposefully directs activities at the forum state and those purposefully directed activities give rise to the litigation before the Court.  *See OMI Holdings, Inc.*, 149 F.3d at 1090.

In this case, the Defendant entered into two separate contracts[1] with Fintube, a resident of Oklahoma, to perform welding work.  Nevertheless, the Tenth Circuit has held that an exercise of personal jurisdiction requires more than the mere existence of a contract.  *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004).  Specifically, the Tenth Circuit stated,

> [a] contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum. *Burger King*, 471 U.S. at 473.  However, "with respect to interstate contractual obligations . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (internal quotation marks omitted).  In a contract case, relevant factors for assessing minimum contacts include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id*. at 479.

*Benton*, 375 F.3d at 1077.

Here, there were more contacts between Tubetech and Oklahoma than the mere existence of a contract.  Specifically, the undisputed facts show the contract at issue in this case was the second contractual agreement between the parties.  Thus, the Defendant engaged in prior negotiations with the Plaintiff as envisioned by *Benton*.  *Id*.  Moreover, the facts suggest the parties contemplated future agreements, as evidenced by the second contract.  Also, important to the analysis are the circumstances surrounding the formation of the contract.  It is

---

[1]  The second contract between the parties is the one at dispute in this case.

6

undisputed the Defendant sent representatives to meet with Fintube in Oklahoma on three separate occasions to discuss welding sheet metal tubes.  Furthermore, the parties engaged in extensive communication via phone and fax during the pendency of the first contract, in negotiations for the second contract, and during the pendency of the second contract.  Critically, Tubetech was aware the welded tubes would be transported back to Oklahoma following the completed welding.  Considering the totality of the contacts the Court finds Tubetech did in fact purposefully direct activities into Oklahoma sufficient to satisfy the first inquiry under the specific jurisdiction framework.

Second, since it has been shown the Defendant purposefully directed activities at Oklahoma, the Court now turns to whether those activities give rise to the instant litigation.  *See OMI Holdings, Inc.*, 149 F.3d at 1091.  Litigation arises out of the Defendant's purposeful activities toward the forum state, when there is a nexus "between Defendant's forum-related contacts and the Plaintiff's cause of action."  *Id.* at 1095.  The cause of action in this case is one sounding in contract; specifically, the Plaintiff is asserting the Defendant breached the contract by deficiently welding the sheet metal tubes.  The direct corollary between the contract and the cause of action in this case certainly satisfies the nexus articulated in *OMI.  Id.*  Therefore, because this cause of action falls under the terms of the contract, and because the contract was created through purposefully directed contacts by the Defendant, the Defendant has sufficient minimum contacts with Oklahoma for this Court to exercise specific jurisdiction over Tubetech.

Even though the Court has found there are sufficient minimum contacts between Tubetech and the State of Oklahoma, the Due Process Clause requires the Court to ensure the exercise of personal jurisdiction over the Defendant would not "offend[] traditional notions of

fair play and substantial justice." *Id.* at 1091.  This inquiry requires the Defendant to prove the

litigation in the chosen forum will be "'so gravely difficult and inconvenient' that [the] party

unfairly is at a 'severe disadvantage' in comparison to his opponent." *Burger King Corp.*, 471

U.S. at 478 (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)).  To determine

whether the exercise of jurisdiction would offend fair play and justice, the Court is to consider,

> (1) the burden on the defendant, (2) the forum state's interest in resolving the
> dispute, (3) the plaintiff's interest in receiving convenient and effective
> relief, (4) the interstate judicial system's interest in obtaining the most
> efficient resolution of controversies, and (5) the shared interest of the several
> states in furthering fundamental substantive social policies.

*OMI Holdings, Inc.*, 149 F.3d at 1095 (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*,

480 U.S. 102, 113 (1987)).

1.  Burden on Defendant Litigating in this Forum

The Defendant has not met its burden of proving that litigation in Oklahoma is so

inconvenient that it precludes an exercise of personal jurisdiction.  "Certainly, 'in this age of

instant communication,' and modern transportation, the burdens of litigating in a distant forum

have lessened." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212-13 (10th Cir.

2000) (quoting *Republic of Pan. v. BCCI Holdings (LUXEMBOURG) S.A.*, 119 F.3d, 935, 947-

48. n.6 (11th Cir. 1997)).  In this case, the Defendant's representatives have made several trips

to the forum state during the course of dealings, thus it is not unreasonable to require them to

defend themselves in the forum state.

2.  Forum State's Interest in Resolving the Dispute

"States have an important interest in providing a forum in which their residents can seek

redress for injuries caused by out-of-state actors." *OMI Holdings, Inc.*, 149 F.3d at 1096

(quoting *Burger King*, 471 U.S. at 483).  Tubetech, an out of state actor, has minimum contacts

with Oklahoma– the face-to-face negotiations of the contract, with an Oklahoma resident,

occurred wholly in this state, and the alleged defective goods were shipped back to Oklahoma.

These facts demonstrate Oklahoma's interest in adjudicating this case.

   3.  Plaintiff's Interest in Convenient and Effective Relief

> [This determination] hinges on whether the Plaintiff may receive convenient and
> effective relief in another forum. This factor may weigh heavily in cases where a
> Plaintiff's chances of recovery will be greatly diminished by forcing him to
> litigate in a another forum because of that forum's laws or because the burden
> may be so overwhelming as to practically foreclose pursuit of the lawsuit.

*OMI Holdings*, *Inc.*, 149 F.3d at1097.

     Defendant has made no claim that Plaintiff "may receive convenient and effective relief

in another forum," therefore the Court finds this factor weighs in favor of an exercise of personal

jurisdiction over the Defendant.

4.  The Interstate Judicial System's Interest in Efficient Resolution

     The fourth factor "examines whether the forum state is the most efficient place to litigate

the dispute."  *Id*. at 1097.  Important elements of this factor "are the location of witnesses, . . .

[and] where the wrong underlying the lawsuit occurred . . . ."  *Id*.

      The Defendant argues that because its principal place of business is Ohio, the witnesses

for the Defendant reside in Ohio.  The Court finds this argument unpersuasive.  Based on this

reasoning it would be nearly impossible to sue a Defendant in a state other than where

Defendant's place of business exists.

     The Court has previously found, the wrong underlying the lawsuit occurred due to the

Defendant's purposefully directed activities toward an Oklahoma resident.  Thus, the Court

concludes that Oklahoma is a more efficient place to litigate this suit than Ohio, the only other plausible forum.

5.   Shared Interests of States in Furthering Fundamental Social Policies

"[T]his factor focuses on whether the exercise of personal jurisdiction by [the forum state] affects the substantive social policy interests of other states or foreign nations." *OMI Holdings, Inc.*, 149 F.3d at 1097.  Here, we merely have a breach of contract dispute between an Oklahoma business and an Ohio business.  Once it has been established the Defendant had sufficient minimum contacts with Oklahoma, there is no implication of an Ohio social policy.

Having found all five of the above factors weigh in the Plaintiff's favor, we hold that an exercise of personal jurisdiction over the Defendant does not "offend traditional notions of fair play and substantial justice" and is therefore proper.

Lastly, the Defendant also alleges the Northern District of Oklahoma is an improper venue.  In a civil action, venue is proper "in a judicial district where any defendant resides."  28 U.S.C. § 1391(a)(1).  Under §1391(c), a corporation is considered a resident of "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  Therefore, because Tubetech is subject to personal jurisdiction in Oklahoma, it is considered a resident of this judicial district and venue is proper.

<u>**Conclusion**</u>

Since the Court finds that the Defendant has sufficient minimum contacts with the State of Oklahoma under the specific jurisdiction framework and the exercise of jurisdiction over the Defendant would not violate the notions of fair play and substantial justice, the Defendant's motion to dismiss for lack of personal jurisdiction is hereby DENIED.  Likewise, the

10

Defendant's motion to dismiss for improper venue is DENIED as the Defendant is a resident of this judicial district pursuant to the venue laws.

IT IS SO ORDERED this 20th day of July 2005.

James H. Payne
United States District Judge
Northern District of Oklahoma