**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **FINTUBE TECHNOLOGIES, INC.,** an Oklahoma corporation and its wholly owned operating division, known as **TEKTUBE**, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )   Case No. 05-CV-56-JHP (FHM) |
| **TUBETECH NORTH AMERICA, INC.,** also known as **TUBETECH**, | )<br>)<br>)<br>) |
| Defendant. | ) |

**ORDER and OPINION**

Before the Court are Defendant Tubetech's Motion for Summary Judgment, Plaintiff Fintube's Response in opposition, Defendant's Reply, and Plaintiff's Surreply.[1] For the reasons contained herein, Defendant's Motion is GRANTED IN PART and DENIED IN PART.

**Background**

Plaintiff Fintube is in the business of manufacturing and selling tubing that has extruded metal surfaces on one side of the tubing. One variety of tubing had a patterned series of ribs on the inside of the tubing. Plaintiff can produce the ribbed tubing (or "X-ID tubing") with a diameter of 1-½ inches, but is unable to produce X-ID tubing with a smaller diameter.

After seeing samples of Tubetech's work, Plaintiff contracted with Defendant Tubetech to obtain X-ID tubing of 1-inch diameter for resale to Plaintiff's customer Docal. Defendant

---

[1] In its Surreply, Plaintiff objects to the inclusion of exhibits A, B, and 10 in Defendant's Reply and moves the Court to strike the exhibits. Although the Court sees no reason to strike the exhibits and, particularly, finds no support for doing so in LCvR7.2(h), as Plaintiff seems to suggest, the Court did not need to rely on said exhibits in reaching the findings contained herein.

1

manufactured the tubing according to Plaintiff's specifications and performed an eddy current test before delivering the tubing to Plaintiff. Plaintiff then further processed the tubing according to Docal's specifications and conducted a second eddy current test. During this test, Plaintiff identified 50 tubes which it believed to have weld defects and removed them from the lot. Plaintiff then filled Docal's order from the remaining tubes.

Docal installed the tubing in two heat exchangers, and then conducted a soap test which revealed 38 tubes with leaks. Upon replacing those tubes, Docal had a helium test performed on the heat exchangers, which test revealed an additional 63 tubes with leaks. Docal then requested that all of the tubing be removed from the heat exchangers and replaced with new tubing.

Upon learning of Docal's problems with the tubing, Plaintiff notified Defendant of the alleged welding defect. Plaintiff then ordered replacement tubing from Defendant. Approximately one month later, Plaintiff directed Docal to scrap the old tubing.

Plaintiff alleges that it incurred over $111,000 in costs to replace the defective tubes and seeks to recover those costs from Defendant. Plaintiff makes claims for breach of contract and negligence against Defendant. These are the issues now before the Court on Defendant's Motion for Summary Judgment. Defendant also claims that Plaintiff's sale of the old tubing for scrap constitutes spoliation of the evidence, and moves the Court to dismiss Plaintiff's claims as an appropriate sanction therefor.

## **Discussion**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. Id. at 249. The presence of a genuine issue of material fact defeats the motion.

In making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. Simms v. Oklahoma, 165 F.3d 1321, 1326 (10th Cir. 1999). The Court also interprets the rule in such a way as to isolate and dispose of factually unsupportable claims or defenses. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment is also appropriate if any element of the prima facie case lacks sufficient evidence to require submission to a jury. Anderson v. Liberty Lobby, 477 U.S. at 248-49.

**I.     Breach of Contract.**

**A.     The Uniform Commercial Code governs this transaction.**

On January 14, 2004, Plaintiff Fintube sent Defendant Tubetech a purchase order for "labor to weld tubes" of a 1-inch diameter, and provided the quantity and description of the tubing it required, as well as a per unit price. On January 28, Defendant Tubetech sent Plaintiff an Order Acknowledgment, billing Plaintiff for a quantity of tubes as described in the purchase order, at a per unit cost. Defendant asserts that the predominant nature of the contract was the sale of X-ID tubing, which is governed by Article 2 of the Uniform Commercial Code (UCC). Plaintiff argues that the contract was for labor, and that no sale of any goods was involved.

Where, as here, a contract involves both goods and services, the "predominant factor"

test is used to determine whether the UCC applies:

> The test for inclusion or exclusion is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom).

Bonebrake v. Cox, 499 F.2d 951, 960 (8th Cir. 1974); *see also* Gilbert Central Corp. v. State, 716 P.2d 654, 663 (Okla. 1986) (adopting the Bonebrake analysis).  In other words, "[t]he question is whether the purchaser's ultimate goal is to acquire a product or procure a service." Mecanique C.N.C. v. Durr Envtl., Inc., 304 F. Supp. 2d 971, 977 (S.D. Ohio 2004).

Defendant argues that the facts in the instant case are very similar to those in McDowell v. Atco Rubber Prod., 221 A.D.2d 876 (N.Y. App. 1995), in which the court found that the fabrication of material provided by another is a sale of goods which is governed by the UCC.  In McDowell, the plaintiff provided the defendant with sheet metal to be used in the fabrication of stainless steel ducts, which ducts the plaintiff would then resell to its customers.  Id. at 877.  The McDowell court found nothing to indicate that the defendant was performing any type of service other than using the raw materials supplied by the plaintiff – the sheet metal – to manufacture the desired product – the ducts – and held that the transaction was therefore "a sale of goods, not a service oriented transaction."  Id.

Plaintiff argues that the instant case is more similar to McCool v. Hoover Equip. Co., 415 P.2d 954 (Okla. 1966).  In that case, Hoover was a secondhand dealer of crank shafts for caterpillar equipment, and McCool was in the business of chroming used crank shafts.  Id. at 956.  When the crank shafts chromed by McCool failed during use, Hoover sued for damages on a breach of warranty theory and won.  Id.  Upon McCool's appeal, the parties disputed whether

there was an implied warranty for the sale of secondhand goods. Id. at 958. However, the court found that no sale of crank shafts was intended or took place been the parties, but that the transaction was "purely one whereby [McCool] was performing chroming work on crank shafts which it furnished to [Hoover]." Id. at 957. The court then held that "[w]here service predominates and the transfer of personal property is only incidental to [the] transaction, it is a contract for work, labor and materials and not a sale." Id. The Court affirmed the award of damages to Hoover on a breach of implied warranty of fitness under the service contract. Id. at 960.

The Court finds Plaintiff's comparison to McCool rather tenuous. In the instant case, Plaintiff supplied Defendant with raw material – steel coils – to fabricate into X-ID tubing – *i.e.*, a different product – whereas in McCool, the crank shaft supplied by the secondhand dealer was still a crank shaft after it was chromed, and was still a crank shaft when it was resold. The facts of this case are therefore more similar to those of McDowell.

Moreover, the contract language in this case is more indicative of a sale of goods. *See, e.g.*, Coakley & Williams, Inc. v. Shatterproof Glass Corp., 706 F.2d 456, 460 (4th Cir. 1983) (identifying contract language, nature of business of the supplier, and intrinsic worth of materials involved as indicative of the nature of the contract). Plaintiff's purchase order and Defendant's order acknowledgment both recite item descriptions, quantities, and unit costs that clearly identify goods, and not service or labor requirements. *See* Fournier Furniture, Inc. v. Waltz-Host Blow Pipe Co., 980 F. Supp. 187, 189 (W.D. Va. 1987). Indeed, the very term "purchase order" is peculiar to a contract for the sale of goods. *See* BMC Indus. Inc. v. Barth Indus., Inc., 160 F.3d 1322, 1330 (11th Cir. 1998). The Court therefore finds that the predominant nature of the

contract was the sale of X-ID tubing, and that Section 2 of the UCC applies.

### B. Issues of fact preclude determination of whether Plaintiff revoked acceptance of the goods.

Under the UCC, a buyer accepts the goods when:

1. After a reasonable opportunity to inspect the goods, the buyer signifies to the seller that the goods are conforming, or that the buyer will retain the goods in spite of their nonconformity;

2. After a reasonable opportunity to inspect the goods, the buyer fails to make an effective rejection; or

3. The buyer does any act inconsistent with the seller's ownership.

12A Okla. Stat. § 2-606(1)(a)-(c).  Here, Plaintiff received the X-ID tubing from Defendant, then annealed, straightened and eddy current tested the tubes.  During this process, Plaintiff identified 50 out of 2197 tubes with weld defects, but retained all the tubing without notifying Defendant of any defects.  Plaintiff then re-sold 1960 tubes to Docal.  After Docal incorporated the tubes into its product and performed two different kinds of testing, additional defects were discovered.  At this time, all of the tubing was removed, and Plaintiff notified Defendant of the problem and requested replacement tubing.  "A buyer is deemed to have accepted goods when, without making any effort to reject them, he receives the goods, processes them, and sells the finished product."  CMI Corp. v. Leemar Steel Co., 733 F.2d 1410, 1414 (10th Cir. 1984) (citing Atlan Indus., Inc. v. O.E.M., Inc., 555 F. Supp. 184, 187 (W.D. Okla. 1983)).  Thus, in this case, Plaintiff clearly accepted the X-ID tubing.  The issue of "rejection," although argued at length by Plaintiff, is therefore not before the Court.

On the other hand, the issue of revocation remains. A buyer who makes an effective revocation "has the same rights and duties with regard to the goods involved as if he had rejected them." 12A Okla. Stat. § 2-608(3). A buyer may revoke acceptance if the nonconformity substantially impairs the value of the product. Id. § 2-608(1). Here, the ultimate user of the tubing deemed it completely unacceptable for inclusion in its product, so this first element is satisfied. See Atlan Indus., 555 F. Supp. at 188 (products not suited for their ordinary use are "substantially without value"). Next, the buyer must have accepted the goods "without discovery of such nonconformity if his acceptance was reasonable induced . . . by the difficulty of discovery before acceptance . . . ." Id. § 2-608(1)(b). The buyer must then notify the seller of the revocation within a reasonable time after the buyer discovers or should have discovered the nonconformity. Id. § 2-608(2). If acceptance is made with knowledge of the nonconformity, however, revocation cannot be made. Id. § 2-607(3)(a).

The obvious question is, when does a buyer have "knowledge of nonconformity"? Here, Plaintiff identified a number of defective tubes which it deemed to be on the "high end" of the expected failure rate [Def. Mtn., Ex. 2 at p.39, ln. 23-25], but went on to ship the remaining tubes which appeared to be in compliance with the specified standards. Defendant argues that Plaintiff should have notified Defendant of the nonconforming goods at that time, and rejected the lot. The parties do not identify a "normal" rate of failure, or a "standard" point at which the defects of some units may be imputed to the entire lot. The Court therefore cannot determine, as a matter of law, whether Plaintiff was entitled to revoke, or whether Plaintiff had "knowledge of nonconformity" under the industry standards.

If Plaintiff was entitled to revoke, such revocation is not effective until the buyer notifies

the seller, and unless such notice is seasonable. 12A Okla. Stat. § 2-608(2). In some cases, it may be reasonable for a buyer to revoke **after** resale, when its own customers discover the defects when they attempt to use the products. See <u>T.H. Rogers Lumber Co. v. M.W. Judd Lumber Co.</u>, 153 P. 150, 151 (Okla. 1915); <u>Atlan Indus.</u>, 555 F. Supp. at 188. Ultimately, however, the question of whether a buyer's revocation is timely is a question of fact. <u>CMI Corp.</u>, 733 F.2d at 1415.

Genuine issues of material fact preclude summary judgment on Plaintiff's breach of contract claim *in toto*. The Court must therefore limit its rulings on this claim to the findings that (1) the claim is governed by Section 2 of the UCC, and (2) the only issue remaining for trial is that of revocation. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's breach of contract claim is GRANTED IN PART and DENIED IN PART.

**II.    Negligence claim.**

Plaintiff in this case also asserted a claim for negligence under the theory that Defendant's "failure to weld the X-ID tubes with care, skill, reasonable experience and faithfulness, and in a workmanlike manner constitutes a breach of duty implied in every contract **for services** in Oklahoma" pursuant to <u>Keel v. Titan Constr. Corp.</u>, 639 P.2d 1228 (Okla. 1981). [Pltf. Resp. at 20 (emphasis added).] In response, Defendant argued that the economic loss rule bars Plaintiff's recovery because no personal injury or property damage (other than damage to the tubing itself) occurred. See <u>Waggoner v. Town & Country Mobile Homes, Inc.</u>, 808 P.2d 649, 653 (Okla. 1990) (holding that "no action lies in the manufacturers' products liability for injury only to the product itself resulting in purely economic loss," and that such loss must be recovered on the contract). Given the Court's finding *supra* that the predominant nature of the

contract at issue here is for the sale of goods, Plaintiff's negligence claim clearly cannot lie. Defendant's Motion for Summary judgment is therefore GRANTED as to this claim.

### III.     Spoliation of Evidence.

Finally, Defendant argues in its Motion for Summary Judgment that Plaintiff's sale of the defective tubing for scrap constitutes spoliation of evidence and is an absolute bar to Plaintiff's recovery on any claim. The parties agree that, after the defective tubing was removed from Plaintiff's customer's product, Plaintiff notified Defendant of the defect and requested replacement tubing and, approximately one month later, Plaintiff instructed its customer to scrap the old tubing. It is unclear whether the parties discussed whether to preserve the tubing. It is disputed outright whether Defendant had the opportunity to conduct any testing on the defective tubing.

Spoliation involves the "intentional or negligent destruction or loss of tangible evidence, which impairs a [party's] ability to prove or defend a prospective civil action." Colleti v. Cudd Pressure Control, 165 F.3d 767, 775 (10th Cir. 1999). If the party claiming spoliation can prove that it is prejudiced thereby, the Court may, in its discretion, enter sanctions against the spoliator. Moyers v. Ford Motor Co., 941 F. Supp. 883, 884 (E.D. Mo. 1996) (citing, *inter alia*, Dillon v. Nissan Motor Co., 986 F.2d 263, 267 (8th Cir. 1993)). Courts have held that "hands-on inspection and testing is critical to a fair trial and the due process for [d]efendants." *See, e.g.,* Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc., 1998 WL 68879 at *5 (10th Cir. 1998). The parties here dispute the fact and extent of Defendant's inspection and testing of the tubing, such that the Court cannot make a full determination in this regard. However, the Court does not find that "a full defense of Fintube's claims is rendered impossible," or that the "extent

9

of the prejudice to Tubetech is severe," as Defendant claims [Def. Mtn. at 16]. The sole remaining issue in the case is governed by the UCC and turns largely on the issues of timing and reasonableness, rather than on the fact of defect. Further, if Plaintiff properly revoked acceptance of the tubes, as discussed *supra*, it was only obliged to "hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them." 12A Okla. Stat. § 2-602(2)(c). Thus, a finding of spoliation would be premature at this time, and Defendant's Motion for Summary Judgment on this issue is DENIED.[2]

## Conclusion

For the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED this 5th day of May 2006.

James H. Payne
United States District Judge
Northern District of Oklahoma

---

[2] The Court also notes that while sanctions for spoliation may be appropriate "even if . . . there is no bad faith or direct knowledge of the plaintiff's part of the destruction," Moyers, 941 F. Supp. at 884, the sanction of dismissal is drastic. *See, e.g.*, Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994). In determining an appropriate sanction, the Court must consider "(1) the degree of fault of the party who failed to preserve the evidence, (2) the degree of prejudice suffered by the opposing party; and (3) **whether there is a lesser sanction that will avoid substantial unfairness** to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." Moyers, 941 F. Supp. at 885 (citing Schmid, 13 F.3d at 79) (emphasis added). Thus, even if spoliation did occur in this case, the Court does not find that Defendant would be severely – if at all – prejudiced in making its case, and dismissal would therefore be inappropriate.